IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **DEREK HERNANDEZ,** | |
| Plaintiff, | |
| vs. | 7:03-cv-108(HL) |
| **SHERIFF GARY VOWELL, CHIEF BRUCE WILLIS, JAIL ADMINISTRATOR MELTON RING, SGT JEFF THOMPSON, and OFFICER MATT LEWIS[1],** | |
| Defendants. | |

**RECOMMENDATION**

This is a § 1983 action brought by a *pro se* State of Georgia prisoner against individuals who are or were employees of the Tift County Georgia Sheriff's Department. The events giving rise to this lawsuit occurred at the Tift County Jail or Law Enforcement Center in February of 2003. This lawsuit was commenced by plaintiff while he was an inmate at Smith State Prison in Glennville, Georgia (Doc. # 2, Complaint). Although not part of the record herein a review of the Georgia Department of Corrections website indicates that the plaintiff was paroled in December 2005. It does not appear that he has provided the Court with his current address as initially ordered when his lawsuit was allowed to proceed (Doc. # 5, p. 3).

Presently pending is the defendants' Motion for Summary Judgment (Doc. # 36) which is supported by other filings (Docs. # 16 - 18 and 37 - 39). Plaintiff was given the required notice of defendants' motion and advised of his right to respond (Doc. # 40). Plaintiff has filed a response to

---

[1] This defendant was earlier dismissed when the court adopted a recommendation from the undersigned to that effect (Docs. # 5 and 6).

which the defendants have filed a reply (Docs. # 43, 46).

*The Facts*

The parties essentially agree that during a prior incarceration at the Tift County Jail in 1989, while the defendant Vowell was the Sheriff the plaintiff escaped or fled from a work detail outside the jail (Doc. # 17, Vowell Aff. ¶ 16, Doc. # 18, Thompson Aff. ¶ 5)[2]. He was convicted of escape for this conduct (Doc # 18, Thompson Aff.¶ ¶ 6-7). On August 28, 2002, plaintiff was arrested for an alleged parole violation and detained in the Tift County Jail, again in the custody of the defendant Vowell (Doc # 18, Thompson Aff. ¶¶ 11-12). He was convicted of theft by conversion on December 10, 2002 and on January 23, 2003, his parole was revoked (Doc. # 18, Thpmpson Aff., ¶¶ 14-15). On February 8, 2003, he again escaped or fled from an outside work detail. He was apprehended or surrendered to the defendant Thompson in Sumner, Georgia later that same day and returned to the Tift County Jail (Doc. # 18, Thompson Aff. ¶¶ 16-18).

Subsequent to plaintiff's second escape from the Tift County Jail an investigation was conducted which led his custodians to believe that he was upset about his parole revocation and pending transfer to a state correctional facility (Doc. # 17, Vowell Aff. ¶¶ 13-14). Given the concern due to plaintiff's apparent state of mind, heightened by his two previous escapes from lawful custody, it was feared that he might attempt yet another escape which could possibly endanger the safety of the plaintiff and employees of the Tift County Jail (Doc. # 17, Vowell Aff.

---

[2]Defendant Jeff Thompson has submitted two affidavits in this matter, both of which will be referenced in this recommendation. His first affidavit submitted with the first motion for summary judgment is document # 18. The second affidavit, submitted in conjunction with defendants' reply to plaintiff's response to defendants' second motion for summary judgment is document # 47.

¶¶ 15-16).³ Plaintiff was therefore placed in an isolation cell equipped with a video camera which provided the opportunity for him to be monitored twenty-four hours a day. Additionally, he was placed in leg shackles which remained in place almost twenty-four hours a day for a period of seventeen days (Doc. # 17, Vowell Aff. ¶¶ 16, 19, 23). Plaintiff was not shackled to his bunk or to the wall. He was allowed to shower and received all of his meals. He was, to the extent allowed by the shackles and the dimensions of the isolation cell, able to move about his cell (Doc. # 2, Complaint, p. 4).

Given his demonstrated propensity for flight, plaintiff does not seem to take exception with the decision to place him in the isolation cell. Plaintiff maintains that the shackles were placed on him solely for punishment, which amounted to cruel and unusual punishment and a denial of his rights to due process as he was not given a disciplinary hearing prior to being placed into the shackles. The defendants maintain that their actions were justified given plaintiff's escape conduct, was necessary for the security of the institution, and therefore did not amount to a violation of his constitutional rights.

*Procedural History*

This is the defendants' second motion for summary judgment in this matter (Docs. # 12, 36). On March 1, 2005, the undersigned entered a recommendation that the original motion be denied. It was found in that recommendation that inasmuch as plaintiff was locked in an isolation cell with a video camera allowing around the clock monitoring, a genuine factual issue existed as to whether placing plaintiff into shackles served an actual legitimate penological interest or was done merely to punish plaintiff. It was further found that if a jury determined that the shackles did not serve a

---

³Plaintiff does not agree with the first two sentences of this paragraph.

legitimate penological interest but were used merely for punishment and he did not receive a disciplinary hearing this could constitute a due process violation. Finally it was found that inasmuch as the plaintiff did not sustain an actual physical injury as required by § 1997e(e) of the Prison Litigation Reform Act ("PLRA") his claims for mental or emotional injury were barred and plaintiff was limited to nominal damages at most (Doc. # 32).

The defendants filed a lengthy objection to the recommendation in which they argued that their analysis used in the brief in support of that motion was outdated (Doc. # 33). Rather than consider the defendants' new arguments at that point of the proceedings when the plaintiff had not had an opportunity to respond thereto and the undersigned had not had the opportunity to consider the new arguments, the United States District Judge to whom this matter is assigned disregarded the recommendation and the objection and denied the motion for summary judgment allowing the defendants thirty days to refile their motion which is presently before the court (Doc. # 35).

*Summary Judgment Standard*

Summary judgment may be granted only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Warrior Tombigbee Transportation Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). The evidence and all factual inferences made therefrom must be viewed by the court in the light most favorable to the party opposing the motion. However, the opposing party cannot rest on his pleadings to present an issue of fact but must respond to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts which must be presented to a jury for resolution. See Van T. Junkins & Assoc. v. U.S. Industries, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden of identifying portions of the pleadings, depositions, answers to interrogatories, and admissions which he believes demonstrate an absence of any genuine issue of material fact. Hairston v. The Gainesville Sun Publishing Co., 9 F.3d 913 (11th Cir. 1993).  In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

If the movant successfully meets his burden, the burden then shifts to the non-movant to establish by going beyond the pleadings that there are genuine issues of material fact to be resolved by a fact-finder.  Clark v. Coats & Clark, 929 F.2d 604, 608 (11th Cir. 1991).  Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. Anderson v. Liberty Lobby , 477 U.S. 242 (1986).  The question is whether the record as a whole could lead a rational trier of fact to find for the non-movant.  Brown v. City of Clewiston, 848 F.2d 1534, 1543 (11th Cir. 1988).

***The Prison Litigation Reform Act's "physical injury" requirement -  § 1997e(e).***

Defendants maintain that plaintiff is precluded from seeking any compensatory damages by the "physical injury" requirement of the Prison Litigation Reform Act ("PLRA").  Section 1997e(e) of that act provides that, "[n]o civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

In this circuit it seems clear that the PLRA requires more than a *de minimis* but less than a substantial or significant physical injury. Harris v. Garner, 190 F.3d 1279 (11th Cir. 1999) vacated

in part by Harris v. Garner, 216 F.3d 970 (11th Cir. 2000).  This also appears to be the rule in the Third, Fifth, Ninth and possibly Second Circuits.  *See* Mitchell v. Horn, 318 F.3d 523 (3rd Cir. 2003), Siglar v. Hightower, 112 F.3d 191 (5th Cir 1997), Oliver v. Keller, 289 F.3d 623 (9th Cir. 2002), and Liner v. Goord, 196 F.3d 132 (2nd Cir. 1999).

In attempting to arrive at an adequate definition or standard for a *de minimis* physical injury the undersigned finds the following language persuasive:

> A claim by a prisoner of an injury he received in an unprovoked assault or excessive use of force by the guards ... should utilize the same approach to the nature of the injury and whether it actually falls under the new statute with regard to being a physical injury as to how people in a free world setting in exercising their day-to-day medical care would treat such injuries. Just as an example, there are numerous scrapes, scratches, cuts abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just everyday living for which they would never seek professional medical care. Thus, an appropriate de minimis standard would be whether as a common-sense category approach to the injury: would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury?

Anderson v. Jones, 1999 WL 1565203 (S.D. AL) citing Luong v. Hatt, 979 F.Supp 481, 486 (N.D. TX 1997).

During discovery the defendants propounded the following interrogatory to the plaintiff. "4.  Please state in detail the nature of the injury or injuries you allege that you suffered as a result of any incident referred to in the complaint or as a result of any act or omission on the part of any defendant."  The plaintiff provided the following response.  "4.  Swelling and scratches to my ankles was the only physically [sic] problems I had, but mentally I'm having to learn how to deal and cope with the legal use of restraints on a dayly [sic] bases [sic].  I'm scar [sic] for life mentally when it comes to the use of restraints." (Doc. # 33, Exhibit A).  Thus, by his own statements the

plaintiff sustained only scratches and some swelling of the ankle(s), which injuries are questioned by the defendants.

In applying the above standard it is clear that this plaintiff sustained only a *de minimis* injury at best. Inasmuch as more than such an injury is required by the PLRA before a plaintiff may seek compensatory damages for a mental or emotional injury, he is precluded from seeking same here.

Plaintiff now appears to want to change his position regarding the extent of his injuries, quite frankly to the detriment of his credibility. This is no doubt due to result obtained when § 1997e(e) of the PLRA is applied to the *de minimis* nature of his physical injury. Plaintiff, for the first time, in his response to the defendants' renewed motion for summary judgment states, "[p]laintiff begged daily for treatment due to the swelling and pain caused by forced [sic] to wear shackles so tight that they cut the blood circulation off." (Doc. # 43, p.5). This statement however is not sworn testimony and is therefore not in evidence. In his affidavit submitted in opposition to the renewed motion for summary judgment plaintiff states, "plaintiff was not aloud [sic] to see medical personal [sic]. (Doc. # 44, ¶ 23). Not being allowed to see medical personnel is certainly not evidence of having received more that a *de minimis* physical injury. For reasons unknown to the court plaintiff also refers to his interrogatory to the defendants as to whether he was seen by a physician while in shackles and the defendants' sworn response that he was not because he did not request to be seen (Doc. # 43, p.7).[4]

---

[4] In this connection see also paragraphs 5 through 13 of defendant Thompson's second affidavit (Doc. # 47) regarding the procedures for being seen by medical personnel while at the Tift County Jail and the plaintiff's failure to request medical attention. This afficavit is also to the effect that defendant Thompson saw plaintiff on an almost daily basis and that he never complained of any injuries.

Even if the record before this court is construed to create a factual issue as to whether the plaintiff requested any medical attention as a result of being in leg shackles for seventeen days, this falls far short of creating a factual issue as to the existence of an actual physical injury. This record is devoid of any evidence that plaintiff sustained anything more than a *de minimis* injury if that. Plaintiff has the burden of proving more than a *de minimis* physical injury at trial or his claims for mental and emotional suffering are barred by § 1997e(e) of the PLRA. Plaintiff has failed to present any evidence of an actual physical injury and therefore has not shown that there is a genuine factual issue as to the extent of his injuries.

In the event that plaintiff survives the remaining analysis of defendants' motion the court will then consider whether, liberally construed, plaintiff's complaint can be considered to be requesting nominal damages. <u>See.</u> <u>Carey v. Piphus</u>, 435 U.S. 247, 255 (1978); <u>Hughes v. Lott</u>, 350 F.3d 1157, 1162 (11th Cir. 2003).

### *Has the Plaintiff shown a violation of a Constitutional Right?*

A reading of plaintiff's complaint leaves one somewhat unclear as to which of his constitutional rights he alleges the defendants to have violated. As earlier noted plaintiff seems to voice no complaints regarding his placement into an isolation cell subsequent to his second escape. His complaints are directed to his being placed in leg shackles for seventeen days while in the isolation cell. It must be noted that while leg shackled plaintiff had the full use of his arms and hands. He was not chained to his bunk or to a ring in the wall of his cell. He was allowed to eat, bathe and perform bodily functions as needed without requesting assistance. The shackles were removed on 'shower day' to allow him to disrobe (Doc. # 2, Complaint, p.4). He could move about his cell which was capable of being monitored around the clock through the use of a video

camera. Defendant Jeff Thompson observed him on a daily basis. And as earlier shown, he sustained, at most a *de minimis* physical injury.

The following language is taken from page four of his complaint, "Sgt. Jeff Thompson who saw my ankles swelling and scratch [sic] up . . . This violated, the due process of the United States Constitution guarantees to every person freedom of bodily movement . . . Also cruel and unusual punishment . . . for no other then [sic] punishment." (Doc. # 2).

As stated by the defendants in their brief, "[t]he Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. . . . Although the Constitution does not require comfortable prisons, it does not permit inhumane ones. . . .Still the Eighth Amendment does not authorize judicial reconsideration of every governmental action affecting the interests or well being of a prisoner. . . instead, after incarceration only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999) (internal citations omitted). "Crucial to establishing an 'unnecessary and wanton infliction of pain' is some proof that officials acted with specific intent. This specific-intent requirement for an Eighth Amendment violation applies to both failure to provide proper medical care and excessive force." Id. (internal citations omitted).

As set out earlier in this recommendation plaintiff has presented no evidence, direct or circumstantial, from which it can be determined that he suffered a legitimate physical injury for which he was denied proper medical care. At most his injuries were *de minimis*. There is no evidence (although possibly some argument) that plaintiff ever sought medical treatment as a result of the shackles. His recitation in this affidavit that he was not allowed to see medical personnel

falls short of showing that he needed or requested medical attention (Doc. 44, ¶23).  Therefore plaintiff's complaint will be considered to be one in which he claims that the shackles amounted to excessive force in violation of the cruel and unusual punishment clause of the Eighth Amendment.

"To establish an Eighth Amendment claim for excessive force, however, Plaintiff must meet an intent requirement more stringent than Farmer's deliberate-indifference standard: she must prove that 'force was applied . . . maliciously and sadistically for the very purspose of causing harm.'" Campbell, 169 F.3d at 1374, (quoting Whitley v. Albers, 475 U.S. 312,320-21, 106 S.Ct. 1078 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)); see also Hudson v. McMillian, 503 U.S. 1, 6-7, 112 S.Ct. 995 (1992).  "[W]hether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 320-21 (quoting Johnson, 481 F.2d at 1033)).

The Whitley case dealt with the use of force in restoring order in the face of a prison riot situation which is not the case here.  However, in the case of Hudson v. McMillian , 503 U.S. 1, 112 S.Ct. 995 (1992), "the Supreme Court extended Whitley's holding outside the prison-riot context and applied the same heightened intent requirement to force used as a prophylactic, preventive measure." Campbell, 169 F.3d at 1374.

As noted by the court in Campbell, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." (quoting Hudson, 503 U.S. at 7, 112 S.Ct. 995 (quoting Whitley, 475 U.S. at 321-22, 106 S.Ct. 1078

(quoting Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861 (1979))).

Therefore, if it can be found that placing the plaintiff in shackles for seventeen days when already housed in an isolation cell with a video monitor was done maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline then the plaintiff would have stated a violation of his constitutional rights.

> Courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives.  Unless it appears that the evidence, viewed in the light most favorable to the plaintiff , will support *a reliable inference of wantonness in the infliction of pain* under that standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 322, 106 S.Ct. 1078 (emphasis added).

The Whitley court also set out five factors helpful in determining whether the force was used maliciously and sadistically for the very purpose of causing harm. (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. Id. at 321.

When those factors are applied to this case it is seen that the extent of the injury is non existent or *de minimis* at most.  Regrading the need for the application of force, plaintiff was a two time escapee from the lawful custody of the defendant Vowell and the investigation conducted subsequent to his second escape led his custodians to believe that the plaintiff was upset at the prospect of being returned to a Georgia Department of Corrections facility.  The need for the

11

application of force under these circumstances can not be seriously questioned or doubted.

Insofar as the relationship between the need and the amount of force used and efforts made to temper the severity of the forceful response is concerned a review of other restraint cases considered by the Eleventh Circuit is instructive. In <u>Williams v. Burton</u>, 943 F2d 1572 (11th Cir.1991) the plaintiff, an extremely disruptive and problematic inmate started acting up and threatening to kill certain correctional officers. His cursing and yelling began to incite other inmates in the segregation unit to act up. The assistant warden decided that it was appropriate to place that plaintiff in four point restraints and that his mouth be covered with tape. Gauze padding was placed over his mouth and secured with adhesive tape. Plaintiff remained in that condition for twenty-eight and one-half hours with brief intervals for eating, physical exercise and toilet use. After finding the initial use of restraints to be justified the court addressed the problem of for how long the continued use of restraints can be justified.

> Once restraints are initially justified, it becomes somewhat problematic as how long they are necessary to meet the particular exigent circumstances which precipitated their use. The basic legal principle is that once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth and Fourteenth Amendments, any any abuse directed at the prisoner after he terminates his resistance to authority is an Eighth Amendment violation. . . . How long restraint may be continued calls for the exercise of good judgment on the part of prison officials. Once it is established that the force was established in a good faith effort to maintain discipline and not maliciously or sadistically for the purpose of causing harm . . . . the courts give <u>great</u> <u>deference</u> to the actions of prison officials in applying prophylactic or preventive measures intended to reduce the incidence of riots and other preaches of prison discipline. . . . The good faith of the officers in exercising that judgment comes in to play. Prison officials here performed continuous observation and management of Williams during his restraint. It is by this observation and management that corrections officials judge, in light

>of their experience and expertise, whether the plaintiff's violent
>nature has abated.  It is clear that federal courts must defer in many
>matters to the expert judgment of these administrators, particularly
>in matters of internal security and order.

Id. at 1575-76 (emphasis added).

In Campbell v. Sikes, 169 F.3d 1353 (11th Cir. 1999), a case arising in this court, the plaintiff was attempting to harm herself and others on repeated occasions.  Based upon her conduct prison officials determined it to be appropriate to place her in "L" shaped restraints on at least five different occasions varying in length from one hour and twenty-five minutes to sixty-six hours and forty minutes. Id. at 1376.  The court described the "L" shape method of restraint as having plaintiff's hands cuffed behind he back or being placed into a straight jacket with her hands behind her. Cuffs were then placed on her ankles which were strapped to the cuffs on her wrists.  The strap was then shortened until her lower legs were perpendicular to her back and she was literally in the shape of an "L."  Id. at 1359.

In both Williams and Campbell the Eleventh Circuit found that the conduct of the defendants did not amount to a violation of the plaintiffs' constitutional rights because the need for the force (restraint) was apparent and in neither case did the length of time that restraints were used rise to the level of being malicious and sadistic merely for the purpose of causing harm.  "Although the record shows that while Williams experienced some discomfort because of his restraint no actual injury was inflicted."  Williams, 943 F.2d at 1575.  "Although resulting in physical discomfort and emotional pain, the restraints undisputedly caused Plaintiff no physical injury."  Campbell, 169 F.3d at 1376.  In the instant case plaintiff sustained, at most, a *de minimis* injury.

Although the use of restraints lasted longer in the instant case, the severity of the restraints

used in both <u>Williams</u> and <u>Campbell</u> was much greater.  Williams was in four point restraints for twenty-eight and one-half hours with the exception of short periods out of the restraints for eating, toilet use and physical exercise.  In <u>Campbell</u>, "the severity of the restraint was tempered somewhat by attention to plaintiff's basic physical needs.  During periods of restraint plaintiff was given 'toileting' on request, offered meals at regular intervals, and sometimes given a mattress rather than being made to lie on the floor."  <u>Id.</u> at 1377.  Here, the plaintiff had only his legs shackled, he had the complete use of his hands.  He could feed himself and was denied no meals.  Likewise he could use the toilet when he wished and moved about his cell.  He could even do sit-ups and push-ups if he wished (Doc # 47, Thompson Aff., ¶ 18). On shower days the shackles were removed so that he could undress and take a shower.  Although restrained for a longer period of time than either Williams or Campbell plaintiff had much more freedom of mobility while restrained.

As to the length of time plaintiff was in shackles, the following from the affidavit of defendant Bruce Willis is pertinent.

> 14.  On February 25, 2003, approximately seventeen (17) days after plaintiff escaped from the jail, Sgt. Jeff Thompson advised me that plaintiff requested the removal of his shackles.  15. Based on my knowledge of plaintiff, I was of the opinion that he was no longer upset about the prospect of transfer to a state correctional facility and, for that reason, I did not believe that plaintiff would be inclined to attempt another escape.  16.  For the reasons set forth in the preceding paragraph, I ordered plaintiff's shackles to be removed.

(Doc. # 16, Willis Aff., ¶¶ 14-16)

Both Williams and Campbell were closely monitored while being restrained.  The record

before the court is not clear as one might wish on how much monitoring of the plaintiff actually occurred. However, it is clear that plaintiff was in a cell equipped with a video camera which provided the capability of constant monitoring. Additionally defendant Thompson saw plaintiff on an almost daily basis while he was restrained. It is therefore obvious that plaintiff was not shackled for seventeen day without being monitored.

The final factor to be considered is the extent of the threat to the safety or staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. Insofar as this factor is concerned, the officials responsible for plaintiff obviously saw in him an individual, who on two previous occasions, had escaped from the lawful custody of the defendant Vowell and who their investigation showed to be upset at the prospect of returning to state custody. Plaintiff points out in his affidavit that at no time did he act out or show any anger or aggression toward anyone (Doc. # 44, ¶ 22, Aff. of plaintiff) which is evidently not disputed by the defendants. However, the possibility of a jailbreak or escape is always frought with the possibility of harm to jail staff, other inmates and the escapee.

In view of the foregoing, the undersigned does not find that when viewed in the light most favorable to the plaintiff, the evidence will support a reliable inference of wantonness in the infliction of pain. Whitley, 475 U.S. at 322. Therefore, this case should not go to the jury as under the circumstances the conduct of the defendants did not amount to a violation of plaintiff's constitutional rights. The force used by the defendants in placing plaintiff in leg shackles for seventeen days was not done maliciously and sadistically for the very purpose of causing harm or pain but rather in a good faith effort to restore order and maintain discipline.

*Qualified Immunity*

The defendants' conduct having been found not to have violated plaintiff's constitutional rights a qualified immunity analysis here is neither necessary or appropriate. See <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151 (200) (The first step is to determine whether a constitutional violation has been shown, if not, there is no need to determine whether the law was clearly established).

*Nominal Damages*

No constitutional violation having been shown the earlier stated issue of nominal damages is moot.

*Conclusion*

For all of the above and foregoing reasons it is the **RECOMMENDATION** of the undersigned that the defendants' Motion for Summary Judgment be **GRANTED.** Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED,** this 9th day of February 2006.

/s/ Richard L. Hodge
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE